Good morning, Your Honors. My name is John Fole, and I'm appearing here on behalf of the plaintiffs. I'd like to reserve two minutes, and in the remaining time I have, I'd like to focus exclusively on the fraud claim and on one aspect of the fraud claim, which is the fraudulent failure to disclose the fact that the position that was being offered to Pierre was under constant pressure for many, many years to be moved to Germany. In the defendant's brief, they make the statement that there's no evidence that Mignano was aware of the constant pressure before he made the offer to Pierre. However, if you look at ER 159, it's very clear that he knew continually that there was constant pressure because he said that when he had been in the constant position, there was constant pressure and there was constant pressure to move it to Germany. If Pierre had not asked the right questions, this would be entirely a different case. But Pierre asked questions about the safety and security of the position in Portland, and the answers that he got were the position is safe, it is secure. There are other positions in Portland that are not safe and secure, but this one is so important, it is. Counsel, how is that argument affected by the clear communication to your client of the at-will nature of the position? The materials that were sent to him were extraordinarily complete in describing, not only just using the phrase at-will, but explaining in rather extensive detail what that meant. Does that supersede anything he may have been told earlier about whether the position was safe and secure or wasn't safe and secure? Well, of course, our position is that there was a significant language problem here. But the fact, I can assume that the position was at-will. In the Meade case, the positions, the employment was all at-will. He was concerned with the idea that he couldn't be fired except for cause, but he was also concerned, as he said in his affidavit, and his wife said in her affidavit, that the position would be there in Portland. So he was focused on two aspects of the job that was offered. One was minimum duration, but the other was the job is going to be in Portland. And when he asked these questions, they were reasonably calculated to elicit that kind of information. Under Oregon law, the Meade case, nondisclosure of material facts can be a form of misrepresentation where the defendant has made representations which would be misleading without full disclosure, and the Meade case goes on to say that's a question of fact for the jury. I take it your argument on this is something along the lines that even if there's a contract that definitively says it's at-will employment, I realize you're challenging the contract formation a bit or the terms, but even if that is a term despite the language difficulty, that there's a tort claim for nondisclosure of a material contingency, like that the job isn't stable, which should have been disclosed under the circumstances, and if he can show all the elements of a fraudulent nondisclosure, which all of which weren't addressed below, as I understand it, like an intention to defraud and reliance and causation of damages, that that nondisclosure could state a claim, should go to a jury. I didn't hear the last part. That a nondisclosure of a material contingency would state a claim that should go to a jury, assuming that there's an issue of fact on the other elements, which, as I saw it, the court didn't even address. That's correct. There is other evidence that the defendants knew that that information was material because when Pierre went to China shortly after he had been on the job, he was told by Pollard, who eventually replaced him, and Nielsen, when they were having beers, Pierre, don't you know about this pressure to move the job? Is there pressure? I didn't know. Nobody told you? You have to know that. You have to know that. And then when he went back and confronted Mignano with it, Mignano essentially lied to him about the pressure. He said, and that's on page 138, he said, well, would you like to move to Germany? And then follow that up by saying, no, there's no French Corps in Germany, you are here for Portland, you came for Portland and the United States, so no way, there's no pressure, the job is safe and secure. Why would Mignano lie about that when everybody else knew about it if it wasn't a material fact? And I would like to reserve the rest of my time for rebuttal unless the court has any questions. Well, you're actually your main argument is anchored on the teaching of the Cedar Rapids case. They dealt with the location of the position. That's correct. The need, the need. Thank you. May it please the court. I'm Tim Wilford for the defendants, at least in this case. The focus of this entire argument has to be on the notion that somehow before Pierre began employment on January 1, that Adidas had some reason to believe that there was some likelihood that the position was going to be moved. Why isn't that an issue of fact for the jury for the reasons that have been explained by Mr. Follon? You may have the better of a jury argument, but why isn't he correct that there's a difference between duration, which was clearly communicated in the at-will employment, and location, which at least arguably is not communicated so clearly in the contract? Because there's no evidence in the record that any plan, any decision, anything had been done on the part of Adidas prior to the time. Why does there have to be a definite plan? Here's my problem with the position. I did study that aspect of your brief. As of the time they're having the conversation, the decision to move the location of the post of the job hadn't yet been made. So it's clear there's no conspiracy where the guy talking to him knows we're going to move this baby, but we're still going to suck him in for a time. But I don't see that that's the issue that you need to address. The way I'm looking at the case, at least as one judge, is that the issue that needs to be addressed is whether there was a nondisclosure of an instability in the position. Of this risk right here, that there was pressure to move the job that might mean it wouldn't last. I mean, this man is moving from France. Do I understand that? That's correct. And he's got a position there. His wife is giving up some position there and maybe benefits, at least it was alleged. And so, I mean, a business doesn't have to have a heart under our law. But it can't misrepresent something. And I don't know that a misrepresentation claim could be shown to a jury, but why isn't there a nondisclosure of a material fact, this point right here? In other words, so that the issues of intent would still be there, but why isn't that enough so that we have to send that one back? I understand your concern, Your Honor, but in this case, there was nothing to disclose. Remember, in Meade and Cedar Rapids, the defendant said that there was a plan. The plaintiff said that there was a decision. And what the court cited in Meade, and I think it's very helpful, the court cited was an Oregon case, and it said that what they said is under Oregon law, there is a duty to disclose likely material contingencies. Okay, they drew the line there, and that's where Oregon law drives the line. But here we have first that statement from Mignano, okay? At the same time, he is making an inquiry saying we would like to have a two-year commitment. Okay. Now, when you put those two ingredients together from one person, from one person, to be sure a decision to move had not been made, but we have the expression there was constant pressure to move. Now, following through with Judge Gould's question, in view of those two ingredients, wasn't there some duty of disclosure? And if so, should that not be a jury question? Your Honor, I don't think under the evidence here there was some duty of disclosure. Okay. If the evidence showed that there was constant pressure, first of all, that the pressure prior to the time of the disclosure or the alleged disclosure was being made, that would be one thing. If the evidence showed that there was any reason to believe that the, quote-unquote, constant pressure, if it did happen before the disclosure, was anything other than rumblings from someone who has no chance of ever getting any authority from anyone to move the position. You're making some jury speech, sir. No, I don't think so, Your Honor. What we're looking for here is whether a juror could find by clear and convincing evidence that before the alleged nondisclosure was made, anyone from Adidas had reason to believe that there was a, as the Cedar Rapids case talks about, the likely material, I think they said likely material contingency. And the point I'm trying to make here is this is not, a juror could not find from clear and convincing evidence in this record, and this is all that's in this record, and I would submit this isn't even. Well, counsel, it isn't all because of the point I think that Judge Aldersert was asking you about, which is that when you, the comments that Mignano made about the duration in and of themselves don't cause there to be a particular duration because of the at-will contract that was sent. But in terms of the permissible inference to be drawn about what this gentleman was told, why doesn't that permissibly combine, in other words, as an implicit promise that the position itself would exist for two years even if he wasn't in it? The position did exist. The position was never eliminated. I don't think that answers your question, but it might clarify. The position in Oregon. The position was never eliminated. The position eventually was filled and is being, to this day I think, is still being filled in German. Well, the point that I was trying to ask you about, though, you said this is all there is, but if someone is told we are thinking of hiring you for two years, maybe even longer, in Oregon, would you like to come to Oregon that implicitly promises that the position will exist in Oregon for two or three years, doesn't it? The important question, well, first of all, no, I don't think it implies. There's no evidence in the record that Mignano made any promises that the position would exist in Oregon. There's no evidence in the record. I didn't ask you if he said that. Is it a permissible inference if someone is discussing the possibility that I'm going to hire you for two or three years in this position in Portland, does that carry a permissible inference that the position will exist in Portland for two or three years? If the statement was made hypothetically that I'm going to hire you for this position in Portland for two or three years, then that might be a permissible inference. But that inference doesn't get you to a jury on this question, because what they have to show is that we had something to disclose, and there's no evidence in the record that Adidas had anything to disclose. Well, how about disclosing that there was constant pressure to move the job from Portland to another continent? Well, think about, first of all, we don't know when that constant pressure was, but think about what that says. But this witness, wasn't he acknowledging that he was aware of it as of January? I'm sorry, it wasn't Mignano? No, I don't think so. I think from the testimony here, this is it. I also know that there's some evidence in the record that Pollard told the appellant that in February 2000, that's after the hire, that there was a lot of pressure to have that job in Germany. That was after the hire, that's right. I realize that, but look, in terms of the realities of what the facts are, sort of like a trial lawyer's rule of probability, is it really probable that we could think there's a lot of pressure in Germany and in other locations to move this post so that three different offices have more proximity to it, that there was no pressure as of the date he's hired, and a couple of months later there's a lot of pressure widespread in the company? It just really doesn't make sense. Sorry, I'm running out of time, but let me just try to respond to it this way. We'll probably give you a little more to respond to. What this court has to decide is whether it is going to make a holding that says that anything, when somebody hires somebody, that if there's any conceivable possibility that the job might change, that that person has to be told any conceivable possibility, if I think there's a possibility that my law firm might merge with a big New York law firm and they might close the Portland office. Is there constant pressure to do that? Well, there could be constant pressure from a whole bunch of people who have no influence, but that's why I'm emphasizing Meade v. Cedar Rapids and the notion, because the court in Meade v. Cedar Rapids sets the bar in a very sensible way. If there's likely material contingencies, then they must be disclosed. Now, in this particular case, what I would ask the court to focus on is whether there's evidence in the record that there was a likely material contingency. And this is on a summary judgment. That's right. So you give all inferences to the claimant. And what I would urge you to recognize is that from this piece of evidence, you could not find that there was a likely material contingency. Except there's one other ingredient. I'm sorry. One other ingredient on the record. The position was moved. And you were saying about if the court decides that to reverse, you were saying that we would be accepting a rule that you are postulating. I'm suggesting that if the court decides to reverse, all we are saying is that under the facts of this case, there's a genuine issue of material fact. That's all. I understand that. That's the only rule that comes out of this case. But recognize in conjunction with the evidence in this record, position didn't move. But there's not a scintilla of evidence that there was any movement of foot to move this position at the time. All we know is there was there. When you say there was no movement, there's not a scintilla of evidence. I don't think that I could see the record that way. And tell me, I'll tell you what I'm looking at. You tell me why, where I'm missing something. If several months after he's hired, he learns that there is a lot of pressure in several different corporate offices, you know, conglomerate with worldwide offices to move an office for some functional reason that affects how everybody gets their job. It seems that it would be a reasonable inference that that kind of pressure doesn't happen overnight because it's based on some fundamental structure of the company. First of all, there's no evidence in this record that there was a significant movement of foot in several different divisions. That is all the evidence you have that there was constant pressure. We don't even know from whom. It might have been from might have been from some people working in the mailroom. Well, what about Pollard saying there's a lot of pressure to have your job in Germany in February? Well, is it like there's no pressure in January, but then all of a sudden there's a lot of pressure. See, there's not enough evidence in this record. They have not put on enough evidence. There may have been a lot of pressure to move the position to Germany at any point. There may have been a lot of pressure to keep it in Portland. It just doesn't. This is a good theory, and I understand the court's sympathy for a situation where if, in fact, there was a likely material contingency that they were aware of that they would have told. Counsel, it's not really a matter of sympathy at all. It has to do with the standard of review on summary judgment. And that is that if there is a reasonable inference to be drawn in favor of the nonmoving party, we're required to draw it. And that's really what we're asking about. Except that in this particular – I understand that, Your Honor, but in this particular case that inference must be by clear and convincing evidence. Well, ER 135 through ER 139 and 141, there's testimony about people, a lot of people in Germany being interested in having this thing moved. A lot of people favored the relocation at 139 to 141. Quote, a lot of pressure to have your job in Germany at 135 to 136. Pierre himself sees the logic of why they'd want to have it in Germany at 135 or 141. The whole point is we're not triers of fact, but on a summary judgment, you've said that the appellant didn't prove this. Well, the appellant didn't have a chance to prove it. They didn't have a chance to present evidence to a jury. And the question is whether the affidavit submitted, if we give them all the inferences, are enough. And it looks to me like there's enough giving all inferences plus joining it together with the circumstances to say issue of fact on nondisclosure. Now, whether there's an issue of fact on fraudulent intent, I don't know. That wasn't even addressed by the district court, right? I think that's correct, Your Honor. And we can affirm on any ground supported by the record. I mean, would the record negate fraudulent intent, giving all inferences to the appellant, or is that an issue that would have to be tried if we found that there was a nondisclosure of a material? If we found there was a nondisclosure of a material contingency, contrary to your argument, is there then an issue of fact on intent shown in the record? Well, Mr. Mignano, you have to understand that there was nothing until November, I believe it is, before Pierre started, the person who set the decision to change this position, that eventually led to changing this decision, was not put into place until November, right, before Pierre started. So there's absolutely no reason to believe that, you know, this is a big corporation, and decisions are made by some new person comes in and makes a decision to restructure, and then one restructured decision leads to another down the road. And to say that there could be fraudulent intent at the time that they were addressing this issue to Pierre, there is literally not a scintilla of evidence that anybody at Adidas had any idea that this was going to happen. In a corporation, there is constant pressure to do things from various sectors all the time. But the fact that there's constant pressure doesn't mean that somehow Mignano or anyone else from Adidas was sitting there saying all of a sudden we think this constant pressure is going to turn into a decision to change the job description. There's no evidence that we knew anything. There's no evidence that anybody knew anything. In a large corporation, see, the problem that I have primarily and ask the court to focus on is with the standard, is that there needs to be evidence, clear and convincing evidence, from which a jury could reach this conclusion. And this is such a vague statement, constant pressure, you know, it doesn't get them to where they need to be. There can't be a theory of negligent misrepresentation here because there's no special relationship, as I understand it. I think that's the reason. It's got to be intentional non-disclosure. Fair call. Okay, that's correct. Thank you, counsel. Very interesting. I understand your arguments. Mr. Fallon, you have some rebuttal time left, and I would appreciate it, at least from my perspective, if you would discuss the issue of intent and what evidence would permit an inference of fraudulent intent. It doesn't have to be intentional fraud. It can be reckless. You mean like deliberate indifference sort of? Correct. But it's more than mere negligence, correct? That's right, Your Honor. And certainly these are large corporations, but as we know from the Meade case, that's just one of the risks you take when you run your business as a corporation. You have the Meade case, the left hand didn't know what the right hand was doing, but this court found that the case should be tried to the jury. I think there's plenty of evidence here from which a jury could infer that Mignano was reckless. What evidence supports that? Well, first of all, let me say Adidas was reckless because ER-58, which is the affidavit of Mourad, contains a statement. Pierre was concerned about whether there was any risk, any risk, about job security with this position. And there's evidence in the record that Mignano thought that Mourad was important to the recruiting process. I think Adidas is charged with knowing that from Pierre's point of view, likelihood wasn't the issue, probability wasn't the issue. Was there any risk? That sounds like your client's intent, which was to be reassured, but where is the intent on the other side to induce? Well, if you know somebody has asked these questions and you are making the representations that the job is safe and secure and you know that there's some information which should be disclosed that really puts the job in the right color, so to speak, and you don't disclose it, that's recklessness. Let me ask you a question. Let's say you were the managing partner of a law firm and you're negotiating with some lawyer from San Diego who wants to move a securities practice to your firm in Portland. And he says to you, the one thing I want to make sure is the securities work for your firm, which has multiple offices, is headquartered here. Do you have a duty if there's, like, constant pressure in your firm from people who want to shift the securities work to New York where you have another office, would you have to tell the person that? I think you do when they ask, because that's important. When somebody is leaving one job to go to another job, and it's important to them, it may not be important to you as the managing partner. I mean, what's important to you as the managing partner is where it's more efficient to have that headquartered. But if it's important to them, you can't say there's nothing, we're not giving any thought to that whatsoever when, in fact, you are. That's recklessness. Let me ask you a question on intent. I wasn't sure why the magistrate judge didn't address certain issues, intent was one of them, these other elements of a misrepresentation claim. Now, if we were to find on this one claim on nondisclosure, misrepresentation by a nondisclosure of a material contingency, that there was an issue of fact on the misrepresentation by nondisclosure, would it have to go to trial on intent, or would it be open for there to be another summary judgment motion made by your colleague? I mean, has the court addressed that, or would that have to go to trial? Is there evidence in the record? To ask you the tough question, is there evidence in the record from your client's point of view that you would say would prohibit us from affirming a judgment on the ground that the record shows no evidence of fraudulent intent? Well, actually, I believe the magistrate judge did address that issue. And when I say fraudulent intent, I mean within the meaning of this deliberate indifference standard. Well, he did find that Mignano had an incentive to withhold this information, and I think because he had an incentive to withhold the information, you could infer that he withheld it in a reckless or intentional way. And I don't have a site center at the moment. It's just before she talks about this issue. This is an incentive because he's supposed to fill the position quickly or something? Because it's a very important position. It needs to be filled quickly, and he's got somebody here who can fill it. If there are no other questions, then thank you very much. Thank you, counsel. The arguments in this case were very helpful. We appreciate them. The case just argued is submitted, and we are adjourned.
judges: Aldisert , Graber, Gould